[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 27, 2010
JOHN LEY
ACTING CLERK

_____

No. 08-10540

_____

D. C. Docket No. 06-01781-CV-ORL-18-UAM

RICARDO D. THOMPSON,

Petitioner-Appellant,

versus

SECRETARY DEPARTMENT OF CORRECTIONS,
FLORIDA ATTORNEY GENERAL,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 27, 2010)

Before DUBINA, Chief Judge, BIRCH and BLACK, Circuit Judges.

PER CURIAM:

Ricardo D. Thompson ("Thompson"), a state prisoner, appeals the district court's dismissal of his 28 U.S.C. § 2254 petition as untimely under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). We granted Thompson a Certificate of Appealability on the following issue:

> Whether, in light of Delancy v. Fla. Dep't of Corr., 246 F.3d 1328, 1330-31 (11th Cir. 2001), the district court erred by dismissing [Thompson]'s 28 U.S.C. § 2254 petition as time-barred where it determined that a state petition for a writ of habeas corpus, which ultimately was dismissed for using the wrong statutory vehicle, was not "properly filed" pursuant to 28 U.S.C. § 2244(d)(2).

Having considered the record, as well as the briefs and oral argument, we conclude that the district court erred in dismissing the § 2254 petition as untimely and REVERSE.

## I. BACKGROUND

In 1998, a jury in Florida's Eighteenth Judicial Circuit convicted Thompson of two counts of sexual battery upon a minor and one count of lewd, lascivious, or indecent act upon a child. His convictions and sentences were affirmed on direct appeal. See Thompson v. State, 731 So. 2d 819 (Fla. Dist. Ct. App. 1999). Thompson was subsequently re-sentenced on 27 April 2001, from which he did not appeal.

Over the course of the next several years, Thompson filed numerous Florida Rule of Criminal Procedure 3.850 ("Rule 3.850") motions and state habeas corpus

2

petitions. Of relevance here are two of Thompson's state habeas petitions – a September 2004 habeas petition filed in Florida's Eighth Judicial Circuit and a December 2005 habeas petition filed in Florida's First District Court of Appeals. The Eighth Judicial Circuit denied his 2004 habeas petition on the ground that his claims should have been brought in a post-conviction (Rule 3.850) motion. The First District Court of Appeals affirmed this ruling. See Thompson v. Fortner, 932 So. 2d 197 (Fla. Dist. Ct. App. 2006). The United States Supreme Court denied certiorari on 10 October 2006. The First District Court of Appeals also summarily dismissed Thompson's 2005 habeas petition, citing Baker v. State, 878 So. 2d 1236 (Fla. 2004) (per curiam). See Thompson v. Fortner, 922 So. 2d 316 (Fla. Dist. Ct. App. 2006) (per curiam). In Baker, the Florida Supreme Court held that post-conviction relief for individuals convicted of noncapital crimes in Florida must ordinarily be obtained through a Rule 3.850 motion in the sentencing court, rather than through a habeas corpus petition. See Baker, 878 So. 2d at 1245.

Thompson filed the instant § 2254 petition pro se in November 2006. The district court found that his one-year limitations period had been tolled under 28 U.S.C. § 2244(d)(2) by all of his collateral proceedings except for his 2004 and 2005 state habeas petitions, which the court found were not "properly filed." R1-31 at 5-6. The court then calculated that Thompson's one-year limitations period

3

had expired in February 2006, thereby rendering his November 2006 § 2254 petition untimely. Accordingly, the district court denied his petition as untimely.

On appeal, Thompson, through counsel, contends that the district court erred in determining that his September 2004 and December 2005 state habeas petitions were not "properly filed" for purposes of tolling the one-year limitations period under § 2244(d)(2).

## II. DISCUSSION

We review de novo a district court's order dismissing a federal habeas petition as untimely, but review its factual findings for clear error. Delancy v. Fla. Dep't of Corr., 246 F.3d 1328, 1329 (11th Cir. 2001) (per curiam).

The AEDPA mandates a one-year statute of limitations for filing a federal habeas corpus petition. See 28 U.S.C. § 2244(d)(1) (2009). This period is tolled, however, for "[t]he time during which a properly filed application for State post-conviction relief or other collateral review with respect to the pertinent judgment or claim is pending." Id. § 2244(d)(2). Here, the parties do not dispute the district court's calculation of Thompson's one-year limitations period other than whether it was tolled by his September 2004 and December 2005 state habeas petitions. Nor does the State dispute Thompson's contention that his federal habeas petition is timely if his excluded state habeas petitions trigger the tolling provision. The issue

4

we must resolve then is whether the district court erred in determining that Thompson's September 2004 and December 2005 habeas petitions were not "properly filed" under § 2244(d)(2).

According to the Supreme Court, an application is "properly filed" under § 2244(d)(2) "when it is delivered to, and accepted by, the appropriate court officer for placement into the official record." Artuz v. Bennett, 531 U.S. 4, 8, 121 S. Ct. 361, 363 (2000). The term "properly filed" thus refers to the application's "compliance with the applicable laws and rules governing filings." Id. at 8, 121 S. Ct. at 364. For example, the filing requirements typically include "the form of the document, the time limits upon its delivery, the court and office in which it must be lodged, and the requisite filing fee." Id. (footnote omitted).

Whether an application is properly filed is distinct from whether the application's claims are meritorious or procedurally barred. See id. at 9, 121 S. Ct. at 364. Consequently, the Supreme Court determined in Artuz that an application raising procedurally barred claims was nonetheless "properly filed" for purposes of § 2244(d)(2). See id. at 11, 121 S. Ct. at 365. The Court explained that an application may include claims that are not properly presented or raised, "irrespective of whether the application containing those claims was properly filed." Id. at 10, 121 S. Ct. at 365. In other words, even though an application may

5

not succeed in obtaining the desired relief, it may still be considered "properly filed" so long as it satisfies the statutory filing conditions. See id. at 11, 121 S. Ct. at 365; see also Drew v. Dep't of Corr., 297 F.3d 1278, 1284 (11th Cir. 2002) (noting that the fact that a motion is successive, and may therefore fail on the merits, "does not render it improperly filed").

We applied this principle in Delancy. There, a Florida prisoner invoked the wrong statutory vehicle to challenge his sentences by filing a Rule 3.800 motion instead of a Rule 3.850 motion, resulting in the dismissal of his Rule 3.800 motion. See Delancy, 246 F.3d at 1330. We found that "under Artuz the district court erred in looking beyond the face of Delancy's Rule 3.800 motion to consider the individual claims (i.e., whether they are challenges to consecutive sentences or illegal sentences) in determining whether that motion was 'properly filed' under § 2244(d)(2)." Id. We concluded that Delancy's Rule 3.800 motion was properly filed for purposes of tolling the one-year limitations period because "on its face, [the motion] met state procedural and filing requirements." Id. at 1330-31.

Likewise, in Estes v. Chapman, 382 F.3d 1237, 1241 (11th Cir. 2004), we concluded that a motion to vacate a sentence was "properly filed" even though the state court ultimately lacked jurisdiction to modify the defendant's sentence. As the State conceded, the Georgia court had initial jurisdiction to determine whether

6

it had jurisdiction to modify the sentence, and the motion otherwise complied with the filing requirements. See id. There was thus "no reason why the failure of Estes' motion should have retroactively rendered it improperly filed." Id. Consequently, Delancy prohibited the district court from looking beyond the face of the motion to ascertain whether it was properly filed. See id.

As in Estes, we find "no principled distinction between this case and Delancy." Id. Like Delancy, Thompson invoked the wrong statutory vehicle. Under Florida law, an individual convicted of a noncapital crime must, with limited exceptions, file a collateral post-conviction challenge to his conviction and sentence via a Rule 3.850 motion rather than a habeas corpus petition. See Fla. R. Crim. P. 3.850(h) (2009)[1]; Baker, 878 So. 2d at 1245. Because Thompson's 2004 and 2005 habeas corpus petitions challenged his convictions, the state courts determined that he should have raised his claims in a Rule 3.850 motion and therefore dismissed his petitions. Despite this error, Thompson filed his habeas

---

[1] This rule provides as follows:

(h) Habeas Corpus. An application for writ of habeas corpus on behalf of a prisoner who is authorized to apply for relief by motion pursuant to this rule shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court that sentenced the applicant or that the court has denied the applicant relief, unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of the applicant's detention.

Fla. R. Crim. P. Rule 3.850(h).

7

petitions in the proper courts, the circuit court of the county of incarceration and the district court of appeal. See Fla. Stat. Ann. § 79.01 (2009) (vesting the state supreme court, district courts of appeal, and circuit courts with concurrent original jurisdiction to issue writs of habeas corpus); see also id. § 79.09 (requiring a habeas petition filed before a circuit judge to be filed in the circuit court of the county in which the prisoner is detained). Thus, like Delancy, Thompson filed his petitions in the proper place. Moreover, there is no evidence that Thompson did not comply with any other statutorily mandated filing conditions. Indeed, the State acknowledges on appeal that "it appears the state habeas petition met the state procedural and filing requirements on its face as a state habeas petition." Answer Brief of Appellee at 16 (emphasis omitted). As such, Thompson's 2004 and 2005 state habeas petitions were properly filed for purposes of triggering the tolling provisions of § 2244(d)(2). See Artuz, 531 U.S. at 8, 121 S. Ct. at 363-64; Delancy, 246 F.3d at 1330-31.

In contravention of Delancy, the State urges us to look beyond the face of the petitions to the actual claims themselves. As the State correctly points out, a Rule 3.850 motion must be raised in the county of conviction, not the county of incarceration. See Fla. R. Crim. P. 3.850(h) (requiring the motion to be filed in the court that sentenced the defendant). Given the state courts' determination that

8

Thompson's habeas claims should have been raised in a Rule 3.850 motion, the State reasons that Thompson not only filed the wrong petition, but he also filed his claims in the wrong court by filing them in the county where he was detained rather than where he was sentenced. The State therefore concludes that his state habeas petitions were not "properly filed" for purposes of § 2244(d)(2).

The State's argument fails for two reasons. First, as already noted, Thompson correctly filed his 2004 and 2005 state habeas petitions in courts having jurisdiction over such petitions. See Fla. Stat. Ann. §§ 79.01, 79.09. Second, and more fundamentally, the State's argument fails to appreciate the distinction articulated in Artuz between the success of a claim and the compliance of an application with the statutory filing requirements. The state procedural bars at issue in Artuz required that a court deny relief on claims that were either already decided on the merits on direct appeal, or that could have been raised on direct appeal but were not. See Artuz, 531 U.S. at 11, 121 S. Ct. at 365. The Supreme Court explained that "[n]either provision purports to set forth a condition to filing, as opposed to a condition to obtaining relief." Id.

Similar to the procedural default rules in Artuz, Rule 3.850(h) essentially serves as a condition to obtaining relief on claims filed in a habeas petition, rather than as a condition to filing the habeas petition itself. If a habeas petition filed by a

9

noncapital defendant asserts claims belonging in a Rule 3.850 motion, the Florida Supreme Court has instructed the court to dismiss the petition as "unauthorized," *not* for lack of jurisdiction. Baker, 878 So. 2d as 1245-46. This distinction recognizes that Florida courts still retain jurisdiction over habeas corpus petitions, which remain available "as a means to correct manifest injustices." Id. at 1246 (Anstead, C.J., specially concurring); see also Chandler v. Crosby, 916 So. 2d 728, 738 (Fla. 2005) (per curiam) (Anstead, J., specially concurring) ("Whatever our intent behind the adoption of rule 3.850(b)(2) or other procedural regulations, we have always made clear that any restriction on habeas relief . . . could never be absolute."). Thus, contrary to the State's suggestion, the fact that Thompson did not succeed in obtaining habeas relief on his claims (because the claims belonged in a Rule 3.850 motion) does not mean he filed his habeas petitions in the wrong court, or that his petitions were not "properly filed" under § 2244(d)(2). See Artuz, 531 U.S. at 11, 121 S. Ct. at 365 (concluding that applications which violate a state's procedural bar rules "will not be successful, but they have been properly delivered and accepted so long as the filing conditions have been met").

The State also contends that Thompson's state habeas petitions are untimely under Pace v. DiGuglielmo, 544 U.S. 408, 125 S. Ct. 1807 (2005). At issue in Pace was "whether the existence of certain exceptions to a timely filing

10

requirement can prevent a late application from being considered improperly filed." Id. at 413, 125 S. Ct. at 1811 (quotation marks and citation omitted). The Court answered no: "In common understanding, a petition filed after a time limit, and which does not fit within any exceptions to that limit, is no more 'properly filed' than a petition filed after a time limit that permits no exception." Id. at 413, 125 S. Ct. at 1811-12. Otherwise, the Court reasoned that a state prisoner could endlessly toll the statute of limitations by filing untimely state post-conviction petitions, which would "turn § 2244(d)(2) into a de facto extension mechanism, quite contrary to the purpose of AEDPA, and open the door to abusive delay." Id. at 413, 125 S. Ct. at 1812. The Court again emphasized the distinction highlighted in Artuz between a condition which goes "to the very initiation of a petition and a court's ability to consider that petition," such as time limits, versus "the type of 'rule of decision' procedural bars at issue in Artuz, which go to the ability to obtain relief." Id. at 417, 125 S. Ct. at 1814. The Court concluded "that a petition that cannot even be initiated or considered due to the failure to include a timely claim is not 'properly filed.'" Id.

According to the State, AEDPA would be similarly undermined if we allowed prisoners to toll the statute of limitations by filing applications not conforming with state law. The State asserts that, pursuant to Florida Statute

11

§ 79.01, a condition to filing a state habeas petition requires that the petition demonstrate probable cause of an unlawful detention. In the State's view, Thompson's habeas petitions attacked his convictions rather than his detention, which meant that his petitions could not even be initiated or considered. Consequently, those habeas petitions were improperly filed under Pace. Any other conclusion, the State submits, would open the door to abusive delay and fail to give deference to Florida's post-conviction laws.

We disagree. Florida Statute § 79.01 provides as follows:

> When any person detained in custody, whether charged with a criminal offense or not, applies to the Supreme Court or any justice thereof, or to any district court of appeal or any judge thereof or to any circuit judge for a writ of habeas corpus and shows by affidavit or evidence probable cause to believe that he or she is detained without lawful authority, the court, justice, or judge to whom such application is made shall grant the writ forthwith, against the person in whose custody the applicant is detained and returnable immediately before any of the courts, justices, or judges as the writ directs.

Fla. Stat. Ann. § 79.01. According to the statute, a person detained in custody may file a habeas corpus petition alleging that his detention is without lawful authority. See id. This is what Thompson did. He was detained in custody pursuant to his 1998 convictions and sentences, and he filed habeas corpus petitions alleging that he was being illegally detained based on his unlawful convictions. Though he did not ultimately obtain relief on his claims because they should have been brought in

12

a Rule 3.850 motion, this fact did not preclude Thompson from initiating his habeas petitions nor did it preclude the Florida courts from considering the petitions in the first instance.[2]  Thus, Pace does not change the outcome of this case.

### III.  CONCLUSION

Based on the foregoing, we conclude that the district court incorrectly dismissed Thompson's federal habeas petition as untimely based on its erroneous determination that Thompson's September 2004 and December 2005 state habeas corpus petitions were not "properly filed" within the meaning of § 2244(d)(2).  As the latter petitions met all the state procedural and filing requirements on their face, Thompson was entitled to statutory tolling of the one-year limitations period under § 2244(d)(2) during the pendency of those petitions.  We therefore REVERSE and REMAND for further proceedings consistent with this opinion.

**REVERSED and REMANDED.**

---

[2] In fact, the Florida courts considered and denied relief in two other state habeas corpus petitions wherein Thompson challenged his 1998 convictions on grounds of ineffective assistance of counsel.  The State does not contest the district court's inclusion of these proceedings in the tolling period.